UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| INFORMATION STRATEGIES, INC., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 13-315 (RC) |
| | : | | |
| v. | : | Re Document No.: | 18 |
| | : | | |
| RONALD C. DUMOSCH, JR., | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

## I. INTRODUCTION

In this breach of contract case, the plaintiff brings suit under this Court's diversity jurisdiction against the defendant, a former employee, alleging breach of a non-competition covenant and misappropriation of trade secrets. The plaintiff seeks injunctive relief, monetary damages, and statutory and contractual attorneys' fees. The defendant moves to dismiss the plaintiff's claim under Federal Rule of Civil Procedure 12(b)(1), asserting that this Court does not have subject matter jurisdiction over the dispute because the amount in controversy does not exceed $75,000. For the reasons discussed below, the Court denies the defendant's motion.

## II. FACTUAL BACKGROUND

Plaintiff Information Strategies, Inc. ("InfoStrat") is a Delaware corporation with its principal place of business in Washington, D.C. *See* Compl. ¶ 4, ECF No. 1. It provides consulting services to public entities and private companies. *See id.* ¶ 6. A significant portion of its work involves Microsoft Corporation's Customer Relationship Management ("CRM") software. *See id.* InfoStrat employed the defendant, Ronald Dumosch, a citizen of Virginia, for

more than five years. *See id.* ¶ 7. On March 12, 2007, Mr. Dumosch executed a Non-Disclosure/Non-Compete Agreement (the "Agreement") with InfoStrat. *See id.* ¶ 19. The non-compete provision of the Agreement prohibits the employee from providing comparable services to any competitor of InfoStrat in the Washington, D.C. metropolitan area for a period of twelve months following the termination of his employment. *See* Compl. Ex. 1, ¶ III, ECF No. 1-1. The non-disclosure provision of the Agreement requires that the employee refrain from disclosing any technical knowledge, inventions, or trade secrets belonging to the company during the employee's employment and at all times afterwards. *See id.* ¶ II.A. In addition, the Agreement contains an arbitration clause, which mandates that any disputes relating to the Agreement be resolved by arbitration except in a situation where InfoStrat seeks injunctive relief. *See id.* ¶ IX. It also contains a clause that allows InfoStrat to recover reasonable attorneys' fees incurred by InfoStrat in any successful action to enforce the terms of the agreement. *See id.* ¶ IV.C.

In December 2012, Mr. Dumosch resigned from InfoStrat and took a job with Booz Allen Hamilton ("Booz Allen"). *See* Compl. ¶ 21. InfoStrat maintains that before Dumosch left for Booz Allen, InfoStrat was in negotiations to work with Booz Allen on a project for the Veterans Administration ("VA") in Washington, D.C. *See* Kolm Decl. ¶¶ 6–9, ECF No. 11-4. This project, according to InfoStrat, involves the integration of modified CRM software with other VA information technology systems. *See* Compl. ¶ 25. InfoStrat had modified the software in a previous engagement with the VA. *See id.* InfoStrat says that a VA employee had recommended that Booz Allen employ InfoStrat to perform the part of the project involving the modified CRM software because InfoStrat had modified the software in the first place. Compl. ¶ 26.

According to Richard Kolm, a project manager for InfoStrat, Booz Allen reached out to InfoStrat in December 2012, asking whether InfoStrat would work with Booz Allen on the VA project. *See* Kolm Decl. ¶ 6. Shortly after that, Booz Allen learned that InfoStrat was competing with Booz Allen for a separate contract with the VA, and the question of Booz Allen subcontracting out work to InfoStrat was dropped. *See id.* ¶ 7. But, according to Mr. Kolm, in January 2013 Booz Allen reached out to InfoStrat again, scheduling two meetings with Kolm for the stated purpose of potentially retaining InfoStrat to do the CRM-related work on the VA project. *See id.* ¶ 8. InfoStrat's hopes of a second chance of becoming Booz Allen's subcontractor were soon diminished, however, as Booz Allen representatives informed Mr. Kolm at a January 9, 2013 meeting that Booz Allen did not have enough money to hire InfoStrat. *See id.* ¶ 9.

At a second meeting on January 9th, Kolm continued the earlier discussion with representatives from Booz Allen. *See id.* ¶ 11. Mr. Dumosch, now employed by Booz Allen, joined in on the meeting. *Id.* At the meeting, Mr. Kolm maintains, Mr. Dumosch made clear that he was working on CRM matters for Booz Allen, and that he was specifically working on the VA project that InfoStrat had lost out on. *See id.* ¶ 12. At the same meeting, Mr. Kolm maintains that Mr. Dumosch discussed an InfoStrat-designed coding template, the architecture that InfoStrat uses for specific projects, and the manner in which InfoStrat uses its employees on projects, all in front of other Booz Allen employees. *See id.* ¶¶ 13-15. InfoStrat considers all of the disclosed information proprietary. *See id.*

InfoStrat alleges that Booz Allen hired the defendant for his knowledge of CRM customization. *See* Compl. ¶ 28. Further, InfoStrat contends that Booz Allen intended to use him on the VA project, to avoid the need to retain InfoStrat. *See id.* ¶ 30. InfoStrat also alleges

3

that Booz Allen hired the defendant to use InfoStrat's knowledge and design solutions on other projects, information that InfoStrat considers to be trade secrets. *See id.*

On March 11, 2013, InfoStrat filed a complaint against Mr. Dumosch alleging breach of contract and misappropriation of trade secrets, with claims for monetary and injunctive relief for each count. *See id*. ¶¶ 51, 54, 63, 69. InfoStrat asserts that the value of the injunctive relief sought exceeds $75,000, that they are seeking damages in excess of $75,000, and that they reasonably believe their attorneys' fees will exceed $75,000. *See id.* ¶ 2. Defendants have moved to dismiss all counts under Federal Rule of Civil Procedure 12(b)(1), on the grounds that the amount in controversy is less than $75,000. *See generally* Def.'s Mot. Dismiss, ECF No. 18.

### III. LEGAL STANDARD

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). It is the plaintiff's burden to establish by a preponderance of the evidence that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Because subject matter jurisdiction focuses on the Court's power to hear a claim, the Court must give the plaintiff's factual allegations closer scrutiny than would be required for a Rule 12(b)(6) motion for failure to state a claim. *See Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Thus, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, "where necessary, the court may consider the complaint supplemented by

undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

A federal district court has jurisdiction over cases and controversies in which the parties are diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a) (2012). In the instant motion, the parties do not dispute diversity of citizenship. However, Mr. Dumosch asserts that the amount in controversy in this case does not exceed the $75,000 threshold set by the statute. The default rule governing the amount-in-controversy requirement is that "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). For a court to reject the amount claimed by the plaintiff, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* at 289. Even a "cursory" allegation of the amount in controversy, if it exceeds the jurisdictional requirement, is sufficient to evade dismissal. 14AA Charles Alan Wright et al., *Federal Practice & Procedure* § 3702 (4th ed. 2011); *see also Rosenboro v. Kim*, 994 F.2d 13, 17 (D.C. Cir. 1993) ("[T]he Supreme Court's yardstick demands that courts be very confident that a party cannot recover the jurisdictional amount before dismissing the case for want of jurisdiction."); *Martin v. Gibson*, 723 F.2d 989, 991, 993 (D.C. Cir. 1983) (characterizing the *St. Paul Mercury* test as "exacting" and "stringent"). Moreover, the "legal certainty" standard applies to complaints for declaratory or injunctive relief in the same way that it does for damages. *See Smith v. Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1978) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333. 346–48 (1977)).

## IV. ANALYSIS

### A. The Arbitration Clause

At the outset, Mr. Dumosch argues that the claims for monetary damages are not properly before this Court, and should be severed from the claims for injunctive relief. Def's Mot. Dismiss at 7. However, the language of the non-compete agreement cuts against Mr. Dumosch's argument. The Agreement states that "[e]xcept in such a *situation* whereas PLAINTIFF seeks injunctive relief as provided . . . above, *disputes* arising out of or relating to this Agreement shall be resolved by binding arbitration." Compl., Ex. 1 ¶ IX (emphases added).

Defendant reads this clause as requiring the monetary claims to be severed from the claims for injunctive relief. Def's Mot. Dismiss at 7. That is a strained reading. A "situation" is a "combination of circumstances at a given moment" or "a state of affairs." *American Heritage Dictionary* (5th ed. 2013). A "dispute" is a "conflict or controversy . . . that has given rise to a particular lawsuit." *Black's Law Dictionary* (9th ed. 2009). The natural reading of the arbitration clause is that in the *event* that InfoStrat seeks injunctive relief, the *whole lawsuit* can be resolved in court. This reading is supported by ¶ IV.B of the Agreement, which states that "[t]he right to an injunction . . . shall be in addition to . . . the recovery of monetary damages from the employee upon adequate proof *to a court* or arbitrator." Non-Compete ¶ IV.B (emphasis added). This provision acknowledges the possibility that a court might award monetary damages. That would be an odd provision to include if the Agreement required that every *claim* for monetary damages go to arbitration. Mr. Dumosch's strained reading of this clause is certainly not enough

to create a *legal certainty* that the damages claims cannot be included in the amount-in-controversy calculation.[1]

## B. The Amount in Controversy

### 1. Plaintiff's Claims

InfoStrat seeks injunctive relief for breach of the Agreement's non-compete covenant, injunctive relief for misappropriation of trade secrets, monetary damages, and attorneys' fees. *See* Pl.'s Opp'n Def.'s Mot. Dismiss 8–9 ("Pl.s' Opp'n"), ECF No. 26. InfoStrat does not have to make a separate showing that each of the claims is worth $75,000; rather, as a single plaintiff suing a single defendant, InfoStrat can aggregate its claims against that defendant, and if the combined value is more than $75,000, that is sufficient. *See Snyder v. Harris*, 394 U.S. 332, 335 (1969); *McIntosh v. Gilley,* 753 F. Supp. 2d 46, 61 (D.D.C. 2010). Additionally, courts do not have to ascertain the value of injunctive relief precisely; so long as a plaintiff's pleadings amount to more than "a formal allegation" that the relief is worth more than $75,000, that is sufficient. *See Smith*, 593 F.2d . at 1100–01.

#### a. Injunctive Relief – Breach of Contract

InfoStrat has alleged that an injunction preventing Mr. Dumosch from competing with it would be worth more than $75,000. *See* Compl. ¶ 2. While the value of injunctive relief is difficult to quantify, federal courts have not had difficulty "find[ing] the requisite jurisdictional amount in actions brought to enforce covenants not to compete." *Premier Indus. Corp. v. Tex. Indus. Fastener Co.*, 450 F.2d 444, 446 (5th Cir. 1971). When measuring the value of injunctive

---

[1] InfoStrat has also argued that Mr. Dumosch has waived his right to insist on arbitration. *See* Pl.'s Resp. Mot. Dismiss at 23-25. Given that the contract does not require the monetary claims to be severed from the claims for injunctive relief, the Court does not need to reach the question of waiver.

7

relief, courts look to the value of the right that the plaintiff seeks to protect. *See Smith*, 593 F.2d at 1099 (citing *Hunt*, 432 U.S. at 346–48).

InfoStrat seeks to protect a variety of contractual rights, including the right to preclude Mr. Dumosch from assisting Booz Allen "in the development and improvement of software and solutions that are competitive with InfoStrat," and the right to preclude Mr. Dumosch "from using InfoStrat's confidential and proprietary information to solicit customers from InfoStrat." *See* Compl. ¶ 47. Courts have looked to a number of metrics to assess the value of an employer's rights under a non-compete agreement, including the revenue generated by a defendant while he worked for the plaintiff. *See, e.g.*, *ISCI Indus., LLC v. Erdle*, No. 5:11-CV-552-F, 2011 WL 6293788 (E.D.N.C. Dec. 15, 2011); *Absolute Machine Tools, Inc. v. Clancy Machine Tools, Inc.*, 410 F. Supp. 2d 665, 670 (N.D. Ohio 2005).

While the parties have not submitted evidence showing an exact figure of the amount of *profit* that InfoStrat accrued from the revenues generated by Mr. Dumosch, the figures provided suggest that it is, at the very least, plausible that Mr. Dumosch's labor was worth more than $75,000 to InfoStrat. For example, the revenue from business that Mr. Dumosch generated in 2012 exceeded $1.5 million dollars, and the revenue from billing for work that Mr. Dumosch himself performed exceeded $265,000. *See* Decl. James Townsend Opp. Mtn. Dismiss ("Townsend Decl.") ¶¶ 2–3, ECF No. 26-1.

Mr. Dumosch counters that the Agreement was limited in scope in that it only precluded him from working for other companies in the Washington, D.C. metropolitan area. *See* Reply to Pl.'s Opp. Def.'s Mot. Dismiss ("Reply"), at 6, ECF No. 30. Therefore, Mr. Dumosch argues, InfoStrat had resigned itself to losing the revenue generated by Mr. Dumosch. *See id.* But, if InfoStrat's primary competitors are located in the Washington, D.C. area, InfoStrat might have

been able to retain the business generated by Mr. Dumosch so long as he was not working for one of those competitors.

Mr. Dumosch also argues that because he is now working on projects for clients who have not done business with InfoStrat, Plaintiff cannot reasonably claim to be losing revenue. *See id.* But, if Booz Allen was able to forgo contracting with InfoStrat because it hired the defendant, as InfoStrat alleges, then an injunction against Mr. Dumosch might well lead to Booz Allen retaining InfoStrat. While Mr. Dumosch might ultimately prevail on these issues, the Court is currently concerned with jurisdiction. The possibility that enforcement of the injunction might be worth $75,000 to InfoStrat diminishes any "legal certainty" that the Court might have as to whether the amount in controversy is less than $75,000. *See Hunt,* 432 U.S. at 346.

### b. Injunctive Relief - Trade Secrets

Although the Court finds that the value of the injunctive relief for breach of contract alone exceeds the required $75,000, the Court proceeds to analyze the remaining relief sought, which may be aggregated to determine the amount in controversy. *See Snyder*, 394 U.S. at 335. InfoStrat has alleged that value of an injunction precluding Mr. Dumosch from misappropriating trade secrets exceeds $75,000. Compl. ¶ 46.

The value of a company's trade secrets can be difficult to ascertain precisely, but "[a]bsolute certainty as to the amount is not essential; it suffices that there is a probability that the damages of the right sought to be protected meet the statutory requirement." *Gomez v. Wilson*, 477 F.2d 411, 420 n.51 (D.C. Cir. 1973). Courts have looked to the "nature and scale" of the plaintiff's business when estimating the value of trade secrets for jurisdictional purposes. *See Davis v. Advanced Care Techs, Inc.*, No. CIV S 06-02449 DFL DAD, 2007 WL 1302736, at *2 (E.D. Cal. May 2, 2007).

InfoStrat alleges that its total revenue in 2012 from CRM-related projects was roughly $4.8 million. *See* Townsend Decl. ¶ 5. If Infostrat's trade secrets are essential to those projects, it is at least *possible* that the injunction could be worth more than $75,000. Mr. Dumosch argues that he has not disclosed any trade secrets, and that InfoStrat has not even alleged such a disclosure. *See* Def.'s Mot. Dismiss at 5–6. The former argument is irrelevant for jurisdictional purposes; whether Mr. Dumosch, in fact, disclosed trade secrets is a merits issue. The latter argument is untrue; InfoStrat alleges that Mr. Dumosch disclosed InfoStrat's template, the architecture that it uses for specific projects, and the manner in which InfoStrat uses its employees to get results for its customers. *See* Compl. ¶¶ 13–15. Mr. Dumosch argues that these are not trade secrets, but that is also a merits argument. The question for jurisdictional purposes is not whether, in fact, these are trade secrets, but rather, whether the value of an injunction stopping Mr. Dumosch from revealing or using InfoStrat's trade secrets could conceivably be worth more than $75,000. *See Smith*, 593 F.2d at 1099. Given that the value of any potential injunction can be aggregated with other potential relief in the calculation of the amount in controversy, it is difficult for the Court to conclude that it is a "legal certainty" that the amount in controversy is less than $75,000.

Further, InfoStrat may not even have to allege the misappropriation of a specific trade secret. The "inevitable disclosure" doctrine allows a plaintiff to prove trade secret misappropriation "by demonstrating that defendant's new employment will inevitably lead them to rely on the plaintiff's trade secrets." *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995). This doctrine has been adopted by a number of courts. *See generally Whyte v. Schlage Lock Co.*, 125 Cal. Rptr. 2d 277, 291 (Ct. App. 2002) (collecting cases); Ryan M. Weisner, *Comment: A State-By-State Analysis of Inevitable Disclosure: A Need for Uniformity and a*

*Workable Standard*, 16 Marq. Intell. Prop. L. Rev. 211 (2012). As this Court is unaware of any cases in which the D.C. courts have addressed this doctrine, this Court cannot say as a matter of legal certainty that the "inevitable disclosure" doctrine would not apply in this case. Consequently, this Court cannot conclude that a hypothetical failure to allege the disclosure of a specific trade secret is relevant.

### c. Monetary Damages- Breach of Contract

In addition to the injunctive relief at issue, InfoStrat seeks monetary damages for breach of contract. "[L]ost profits are generally recoverable in a breach of contract action in the District of Columbia." *Fed. Fire Prot. Corp. v. J.A. Jones/Tompkins Builders, Inc.*, 267 F. Supp. 2d 87, 92 (D.D.C. 2003) (citing *Sears, Roebuck & Co. v. Goudie*, 290 A.2d 826, 832 (D.C. App. 1972)). InfoStrat alleges that it lost a specific contract with Booz Allen as a result of Mr. Dumosch breaching his non-compete agreement, *see* Compl. ¶ 54, and that the contract would have been worth at least several hundred thousand dollars to InfoStrat. *See* Townsend Decl. ¶ 4. Mr. Dumosch argues that both sides have stipulated that InfoStrat lost Booz Allen's business because InfoStrat had worked for one of Booz Allen's competitors. *See* Def.'s Mot. Dismiss at 5. But InfoStrat alleges that Booz Allen reversed itself and offered to meet with InfoStrat after the earlier rebuffing. *See* Kolm Decl. ¶¶ 8–9. Given that Booz Allen allegedly reconsidered, the Court cannot be certain that the decision to forgo working with InfoStrat was due to InfoStrat working with one of Booz Allen's competitors.

Plaintiff alleges the contract with the VA would have generated at least several hundred thousand dollars of revenue. *See* Pl.'s Resp. Mot. Dismiss at 17 (citing Townsend Decl. ¶ 4). Revenue is not profit, but it is conceivable that several hundred thousand dollars of revenue could include more than $75,000 in profit. And given the lack of evidence on this question the

11

Court cannot be "legally certain" that the amount in controversy, based on the potential damages award alone, is less than $75,000; if the damages are aggregated with the injunctive relief, the question of jurisdiction becomes even simpler.

### d. Attorneys' Fees

"Attorney fees are part of the amount in controversy if they are provided for by statute or contract." *Zuckman v. Monster Bev. Corp.*, No. 12-cv-1978 (JDB), 2013 WL 3992932, at *5 (D.D.C. Aug. 6, 2013) (citing *Mo. State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933)). The Agreement contains a clause that requires Mr. Dumosch to pay all court costs and reasonable attorneys' fees incurred by InfoStrat during this litigation if InfoStrat is successful. *See* Compl., Ex. 1 ¶ IV.C. Additionally, the D.C. Uniform Trade Secrets Act allows a plaintiff to recover attorneys' fees upon proof of willful or malicious misappropriation of trade secrets, which InfoStrat's complaint alleges. *See* D.C. Code § 36-404; Compl. ¶¶ 67–68.

Federal courts are split on the question of whether attorneys' fees that have yet to be incurred can be included in the amount-in-controversy calculation. *Compare Francis v. Allstate Ins. Co.*, 709 F.3d 362, 368–69 (4th Cir. 2013) (allowing future attorneys' fees in the amount-in-controversy calculation), *with Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958 (7th Cir. 1998) ("[P]ost-filing events that increase defendant's outlay cannot create jurisdiction that was lacking at the outset."). The D.C. Circuit has not weighed in on the issue; thus, this Court cannot conclude to a "legal certainty" that future attorneys' fees are not part of the calculation. It is possible that reasonable attorneys' fees will exceed $75,000. Therefore, the possibility that they are part of the calculation is sufficient to find the requisite amount in controversy.

Mr. Dumosch argues that because InfoStrat waited seven months to sue him and waited an additional five months to take discovery, InfoStrat has limited its legal fees such that it is

"implausible" that those fees would exceed $75,000. Reply at 3. Mr. Dumosch fails to explain how the length of time between his joining Booz Allen and the filing of this lawsuit has any bearing on the amount of money InfoStrat will reasonably spend on attorney's fees. Further, the fact that InfoStrat has been hesitant to take discovery has no bearing on how much they might spend on discovery in the future. If anything, the decision to take no discovery cuts in the other direction; if the overall costs of taking discovery were trivial, InfoStrat would have had little reason to hesitate. Conversely, if the discovery costs were expected to be substantial, InfoStrat would have good reason to wait until this court ruled on the preliminary motions. In any event, it is difficult for this Court to conclude that, as a "legal certainty," InfoStrat will not be entitled to $75,000 in attorneys' fees at the end of the litigation. When the potential attorneys' fees are aggregated with the potential value of injunctive relief and monetary damages, such a conclusion becomes untenable.

## 2. Defendant's Cost to Comply

When valuing injunctive relief for the purposes of the amount in controversy requirement, the Court can also look to "the cost to the defendant[] to remedy" the alleged harm. *Smith v. Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1978). InfoStrat argues Mr. Dumosch might spend more than $75,000 to comply with an injunction. Pl.'s Opp'n at 20. InfoStrat bases this argument on Mr. Dumosch's contentions in an earlier brief, where he discussed the costs of being terminated from his job. *See* Def.'s Opp. Mot. Prelim. Inj. at 25–26, ECF No. 14. There is some tension, however, between InfoStrat's arguments on this question and a provision in the Agreement where Mr. Dumosch acknowledged that enforcement of the non-compete would "not create an undue hardship" or render Defendant "[in]capable of still earning a livelihood." *See* Compl., Ex. 1 ¶ 4.A. This tension is resolvable. The costs of compliance could exceed $75,000

and not create an "undue hardship" as the term is understood in the Agreement. This possibility is enough to undermine any legal certainty that the cost to Mr. Dumosch of complying with the injunction will not exceed $75,000.

Mr. Dumosch argues that his cost to comply with the Agreement will be less than $75,000 because he is free to compete with InfoStrat in Texas and Indiana. Reply at 7. Still, Mr. Dumosch might not find a job in one of those states. Indeed, as Mr. Dumosch himself argued, if he is barred from working at Booz Allen, he would be deprived of his livelihood, and his job search might be lengthy. Def.'s Opp'n Mot. Prelim. Inj. at 25, ECF No. 14. Thus, the possibility that Mr. Dumosch might find employment elsewhere does not create a "legal certainty" that the cost to Mr. Dumosch of complying with the injunction is less than $75,000.

## V. CONCLUSION

For the foregoing reasons, this court denies the defendant's motion to dismiss for lack of subject matter jurisdiction. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: February 10, 2014　　　　　　　　　　　　　　　　　　RUDOLPH CONTRERAS
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge